**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTI DISTRICT LITIGATION**

---

| | |
|---|---|
| IN RE: SMITTY'S/CAM2's 303 TRACTOR HYDRAULIC FLUID LITIGATION | MDL NO. _____ |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SMITTY'S SUPPLY, INC., AND CAM2 INTERNATIONAL, L.L.C.'S MOTION FOR CONSOLIDATION AND TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 AND JPML RULE 7.2**

---

Pursuant to 28 U.S.C. § 1407 and rule 7.2(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Defendants Smitty's Supply Inc. ("Smitty's"), and CAM2 International, L.L.C. ("CAM2") [collectively referred to as "Defendants"] respectfully submit this Memorandum of Law in support of their Motion for Transfer and Coordination for pretrial purposes of all individual cases identified on the Schedule of Actions ("Actions") as well as any cases subsequently filed involving similar facts or claims ("tag along cases") to the United States District Court for the Eastern District of Louisiana.

I.      Preliminary Statement

There are currently at least eight actions pending in eight different judicial districts (representing eight different states) in the United States alleging similar claims and conduct against some or all of the Defendants resulting in similar alleged injuries.  The central factual allegation in all of these actions is the same:  the labeling and quality of Smitty's and CAM2's 303 tractor hydraulic fluid.  Each of the Actions seek class certification and assert nearly identical causes of action. Further, because of the scope of Smitty's and CAM2's sales of the 303 Tractor Hydraulic Fluid, it is likely that similar actions will be filed in at least forty-one more federal jurisdictions (representing forty-one additional states). Transfer for consolidation and coordination is proper

1

because each of these Actions and tag along cases arise out of the same or similar center of operative facts, arise out of the same or similar alleged wrongful conduct, will involve the resolution of the same or similar questions of fact and law and discovery will be substantially similar and involve many of the same documents and witnesses.

"The multidistrict litigation statute, 28 U.S.C. § 1407, was enacted as a means of conserving judicial resources in situations where multiple cases involving common questions of fact were filed in different districts." *Royster v. Food Lion (In re Food Lion),* 73 F.3d 528, 531-32 (4th Cir. 1996). Two of the critical goals of this statute are to promote efficiency and consistency. *Illinois Municipal Retirement Fund v. Citigroup, Inc.,* 391 F.3d 844, 852 (7th Cir. 2004). Granting the instant motion will advance these goals in three primary ways. First, transfer and consolidation will serve the convenience of the parties and the witnesses by avoiding duplicative discovery and reducing litigation costs. Second, judicial economy will be maintained by preventing the various courts from having to address the same arguments and issues multiple times. Finally, transfer and consolidation will result in the just and efficient resolution of this litigation by avoiding conflicting rulings on the common issues in dispute and on class certification. Moreover, none of the cases has advanced significantly such that transfer to the Eastern District of Louisiana would be inefficient. The Eastern District of Louisiana is the superior forum because it has favorable docket conditions and has the capacity and experience to handle this multidistrict litigation. Additionally, it is easily accessible from locations throughout the country, including Roseland, Louisiana and Nashville, Tennessee where a number of witnesses and documents are located. For all of these reasons as discussed in more detail below, Defendants request that the Panel transfer the actions to the Eastern District of Louisiana for consolidated pretrial proceedings.  Defendants are aware that Tractor Supply Company also intends to seek

consolidation in all actions, but seeks transfer to the Southern District of Texas. While Defendants request transfer to the Eastern District of Louisiana as set forth herein, Defendants do not object to Tractor Supply's request for transfer to the Southern District of Texas.

## I.   FACTUAL BACKGROUND

Tractor Hydraulic Fluid ("THF") is a multifunctional lubricant that is manufactured for and used in tractors and equipment to lubricate the transmission, differential and gears in tractors and implements. In the early 1960's John Deere manufactured a popular and widely used tractor hydraulic fluid called JD-303 or simply "303." Soon many other manufacturers began manufacturing similar, economical tractor hydraulic fluids, including Smitty's. The term "303" became synonymous within the industry with such economical tractor hydraulic fluids which were typically marketed in yellow containers. Smitty's manufactured and marketed a 303 tractor hydraulic fluid for use in pre-1974 equipment which was originally called Super S Supertrac 303 and subsequently Super S 303. The product was sold by various retailers throughout the United States, including Tractor Supply and Orscheln. Smitty's also manufactured, on behalf of CAM2 International, a 303 tractor hydraulic fluid which was marketed and sold by CAM2 as CAM2 ProMax 303 Tractor Hydraulic Oil and subsequently as CAM2 303 Tractor Hydraulic Oil. These products were, likewise, sold by various retailers in numerous states.

Sperm Whale oil was an ingredient in John Deere's 303 tractor hydraulic fluid. In the mid-1970s, the passage of laws protecting endangered species outlawed the use of Sperm Whale oil. As a result, John Deere formulated new products for use in its tractors which did not contain Sperm Whale oil. However, industry wide, manufacturers, sans Sperm Whale oil, continued to market economical tractor hydraulic fluid using the generic term "303." The various Plaintiffs in the multiple cases have alleged that the Defendants deceptively mislabeled, marketed and sold the 303

tractor hydraulic fluid as meeting John Deere 303 specifications when in fact, such specifications could not be met because the Smitty's products did not contain Sperm Whale oil.

The various Plaintiffs have also alleged that Defendants deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, the subject tractor hydraulic fluids did not meet such specifications and did not contain the advertised anti-wear and protective properties. Each of the cases filed in the eight federal jurisdictions in eight different states alleges claims of negligence, breach of warranties, fraudulent and negligent misrepresentation and violations of consumer protection laws. Each of the cases seek damages resulting from the alleged deceptive practices, mislabeling and property damage associated with the use of the product, as well as punitive damages, attorney's fees and any other permitted damages under state consumer protection laws.

## II.   ARGUMENT

The Smitty's 303 Tractor Hydraulic Fluid Actions pending in numerous different federal Districts meets the requirements for transfer pursuant to 28 U.S.C. 1407, and therefore transfer of the above referenced Actions is warranted.

### A.  Standard for Transfer and Coordination

Transfer for coordinated or consolidated pretrial proceedings is appropriate where federal civil actions present "common questions of fact," and transfer will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. The Panel considers the following factors when determining whether to authorize transfer and consolidation of multidistrict actions: (1) one or more common questions of fact pending in different districts; (2) a transfer would serve the convenience of parties and witnesses; and (3) a

transfer would promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a).  The purpose of the multidistrict litigation process is to prevent duplication of discovery and to eliminate the potential of inconsistent pretrial rulings. *In re Eastern Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763, 764 (J.P.M.L. 1975). Upon a motion for transfer, the Panel "analyzes each group of cases in light of the statutory criteria and the primary purpose of the MDL process to determine whether transfer is appropriate." *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F. 3d 1217, 1229 (9th Cir 2006).

### B.  The Actions Include Allegations of Common Questions of Fact

The first element of the Section 1407 transfer analysis is whether there are one or more common questions of fact. Where the pending cases are based on the same core factual allegations, the Panel has determined that the "common questions of fact" prong is satisfied. *See, e.g., In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.,* 229 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002)(concluding that there were common questions of fact where all actions focus on common allegations); *In re Baldwin-United Corp. Litig.,* 229 F. Supp. 2d 1377, 1378 (finding that common questions of fact exist where actions share same core allegations). "Indeed, when two or more complaints assert comparable allegations against identical defendants based upon similar transactions and events, common factual questions are presumed." *In re Air West, Inc. Sec. Litig.,* 384 F. Supp. 609, 611 (J.P.M.L. 1974); *see also In re Sugar Indus. Antitrust Litig.,* 395 F. Supp. 1271, 1273 (J.P.M.L. 1975)(concluding that transfer was appropriate because the presence of the same defendant in each action "certainly gives rise to common factual issues").

Here, the core factual allegations against Defendants in each action are practically identical.  In fact, the Complaints in each of the individual Actions essentially mirror one another in terms of both the facts alleged and the claims plead.  The various Plaintiffs assert in each Action

that they suffered damages as a result of the marketing and sale of Smitty's 303 tractor hydraulic fluid, including its manufacture of CAM2 303 products. Each Action asserts essentially the same underlying facts and course of conduct by the Defendants. Such questions of fact as set forth by the various Plaintiffs in each Action include:

    a.  What were the components and qualities of Defendants' 303 THF Products, and the cost to Defendants to manufacture, distribute, market and sell their 303 THF Products;

    b.  Whether Defendants were unjustly enriched;

    c.  Whether Defendants were negligent;

    d.  Whether Defendants breached the express warranties provided with regard to the 303 THF Products;

    e.  Whether Defendants breached the implied warranty of merchantability with regard to the 303 THF Products;

    f.  Whether Defendants breached the implied warranty of fitness with regard to the 303 THF products;

    g.  Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the 303 THF Products and the nature of the products and the specifications the products claimed to meet;

    h.  Whether Defendants' manufacturing, labeling, advertising, marketing, and/or sale of their 303 THF Products was deceptive, unfair, and/or dishonest

    i.  Whether Defendants studied or tested their labeling and the effect of the labeling on consumers' perceptions, and whether Defendants studied the susceptibility of consumers who might purchase tractor hydraulic fluid;

    j.  Whether Defendants' representations regarding their 303 THF Products were false and made knowingly by Defendants;

    k.  Whether Defendants' representations were false and made negligently by Defendants; and,

    l.  Whether use of the 303 THF Product caused and/or exposed equipment to damage.

All of the Plaintiffs allege that damage to equipment was caused by the non-conforming or non-equivalent tractor hydraulic fluid which is the subject of this litigation. As such, similar questions of science will be presented in each of these cases and which will likely be supported by the same expert witnesses, both for the plaintiffs and defendants.

Here, there is no question that the Actions share a common core of operative factual allegations regarding the contents of the 303 products, representations regarding the performance of the 303 products on labels and other marketing materials; the actual performance of the 303 products, and any alleged damages caused by the performance of the 303 products. Because the factual assertions in each of the instant actions are nearly identical, and many important legal issues in dispute will also be identical, transfer and coordination or consolidation of the Actions is appropriate. *See In re Factor VIII or IX Concentrate Blood Prods, Prod. Liab. Litig.,* 853 F. Supp. 454, 455 (J.P.M.L. 1993).[1]

Additionally, as plead by Plaintiffs, all of the Actions rely upon similar legal theories of recovery. These theories include negligence misrepresentation, breach of warranties, unjust enrichment, unfair business practices, and breach of consumer protection laws of various states. While not every Action asserts every identical cause of action, and the application of state laws may vary, the Actions share related underlying theories of liability focusing on Defendants' alleged negligent or fraudulent conduct. As this Panel has previously stated, "the presence of

---

[1] While Defendants acknowledge, for purposes of transfer, that the various Plaintiffs have alleged virtually the same allegations in each of the pending eight Actions, Defendants do not concede commonality, typicality or the other elements of Federal Rule of Civil Procedure 23. For purposes of this Motion, Defendant is only stating that the pretrial proceedings can be more efficiently and fairly litigated in a single forum. Defendants reserve their right to challenge class wide commonality, typicality and the other requirements of Rule 23 for purposes of class certification. *See e.g., Wal-Mart Stores v. Dukes,* 564 U.S. 338 (2011).

additional or differing legal theories is not significant when the actions still arise from a common factual core . . . ." *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1358, 1360 (J.P.M.L. 2008).

Because the various Plaintiffs allege numerous common issues of fact in the pending Actions, the first element of transfer under Section 1407 is satisfied.

## C. Transfer Serves the Convenience of the Parties and Will Prevent Duplicative Discovery

Transfer is warranted if it will conserve the resources of the parties, their counsel, and the judiciary. The convenience of the parties and prevention of duplicative discovery also favors transfer. *See* 28 U.S.C. § 1407(a). All but one of the Actions have not even begun the discovery process. One action, *Zornes v. Smitty's Supply, Inc., et al.,* No. 2:19-cv-00257-JAR (D. Kan), is in the discovery process. If the Actions proceed separately, substantial duplicative discovery will occur due to common issues of law and fact. Multiple cases could involve or require repetitive depositions of the Defendants' corporate representatives, current or former employees and expert witnesses, as well as the production of the same records and duplicative discovery requests through interrogatories and requests for production of documents. *See In re Pilot Flying J Fuel Rebate Contract Litigation,* 11 F. Supp. 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of Pilot's officers and employees and duplicative document discovery.); *See also, In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 883 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties."). Should there be no transfer, Defendants will be forced to defend these Actions in multiple jurisdictions with different pretrial schedules and subject to different judicial decision-making processes. Multiple cases proceeding separately could result in repetitive depositions of the same company representatives, employees, and expert witnesses along with duplicative or overlapping document productions and written discovery responses, not to

mention conflicting scheduling obligations. Transfer will permit coordinated, centralized document production, minimize duplicative depositions and discovery, and limit travel for both the parties and witnesses.

Case dispositive motions and evidentiary motions seeking to exclude expert testimony under the Federal Rules of Evidence will be filed in every one of the Actions. If the cases are not consolidated such motions will be presented in over eight different courts. This presents a dangerous opportunity for disparate rulings, creates unnecessary work for the federal district and appellate courts, and substantial uncertainty for the parties. These Actions include and will include thousands of pages of discovery, including documents, deposition transcripts, exhibits, and scientific literature. It would be inconsistent with 28 U.S.C. § 1407 to permit such an inefficient and inequitable process, through multiple courts to exist. Therefore, transfer is proper

The Panel has previously granted motions to transfer under these circumstances. *See, e.g., In re Pilot Flying J Fuel Rebate Contract Litigation (No. II),* 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014)(granting the motion to transfer in part because "[c]entralization will avoid repetitive depositions of Pilot's officers and employees and duplicative document discovery regarding the alleged scheme"); *In re Zurn Pex Plumbing Products Litigation*, 572 F. Supp. 2d 1380, 1381 (J.P.M.L. 2008) (granting transfer and consolidation because of the "overlapping and…nearly identical factual allegations that will likely require duplicative discovery and motion practice"). Transfer is necessary to mitigate these burdens. If discovery is coordinated, witnesses can be deposed once for all actions minimizing any travel and undue time burdens for lay and expert witnesses.

Additionally, the Panel has frequently acknowledged the benefits of a single judge administering pretrial procedures and schedules under these circumstances. *See, e.g., In re*

*Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978)("[Plaintiffs] will have to depose many of the same witnesses, examine many of the same documents, and make many similar pretrial motions in order to prove their…allegations. The benefits of having a single judge supervise this pretrial activity are obvious."); *In re Cuisinart Food Processor Antitrust Litig.,* 506 F. Supp. 651, 655 (J.P.M.L. 1981)(consolidation and transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities"); *In re Maytag Corp. Neptune Washer Prods. Liab. Litig.,* 333 F. Supp. 2d 1382, 1383 (J.P.M.L. 2004)("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to…class certification matters), and conserve the resources of the parties, their counsel and the judiciary."). With transfer and consolidation, any discovery disputes can be resolved in one forum instead of multiple times in different courts. "Centralizing these actions under Section 1407 will ensure streamlined resolution of this litigation to the overall benefit of the parties and the judiciary." *See In re Zurn Pex Plumbing Products Litigation,* 572 F. Supp. 2d at 1381; *see also In re Union Pac. R.R. Co. Empl. Practices Litig.,* 314 F. Supp. 2d 1338, 1384 (J.PM.L. 2004)(finding that centralization is necessary to "conserve the resources of the…judiciary").

While Defendants anticipate, should there be no transfer, a minimum of 40-50 cases filed or removed to federal court regarding Smitty's 303 tractor hydraulic fluid, even the current level of litigation would benefit from transfer and coordinated proceedings. *See In re First Nat'l Collection Bureau Inc., Tel. Consumer Prot. Act (TCPA) Litig*., 11 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014) ("Although there are relatively few parties and actions at present, efficiencies can be gained from having these actions proceed in a single district."); *In re Hyundai & Kia Fuel Econ. Litig.,* 923 F. Supp. 2d 1364 (J.P. M.L. 2013) (creating multidistrict litigation for less than 15

pending actions involving fraud and misleading marketing); *In re: Zurn Pex Plumbing Products Liability Litigation,* 572 F. Supp. 2d 1380 1381 (J.P.M.L. 2008) (transfer and consolidation of three (3) cases and six (6) potential tag-along cases because of overlapping and nearly identical factual allegations which will result in duplicative discovery and motion practice).

Transfer of the Actions will serve the convenience of all parties, eliminate duplicative discovery and motion practice, and save both the parties and the courts significant time, effort and money.  The second element supporting transfer exists in these Actions and the motion for transfer should be granted.

**D.  Transfer Will Promote Just and Efficient Conduct of the Actions**

For many of the same reasons that transfer and consolidation will serve the convenience of the parties, witnesses, and courts, it will also promote the just and efficient conduct of these actions. Indeed, as detailed above, these actions are based on nearly identical factual allegations and assert substantially similar causes of action. When "an analysis of the complaints reveals a commonality of factual issues," transfer and consolidation "is necessary in order to prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings." *In re A.H. Robins Co. "Dalkon Shield" IUD Prods. Liab. Litig.,* 406 F. Supp. 540, 542 (J.P.M.L. 1975). In fact, when determining whether consolidation and transfer will promote just and efficient litigation, the Panel assesses similar factors including judicial economy, prevention of duplicative discovery on common issues, and avoidance of conflicting or inconsistent rulings.  *In re Endangered Species Act Section 4 Deadline Litig.,* 716 F. Supp. 2d 1369, 1369 (J.P.M.L. 2010).

Multiple factors are considered by the Panel in determining whether the just and efficient conduct of a litigation will be advanced by transfer, including (1) avoiding conflicting rulings in various cases; (2) prevention of duplication of discovery on common issues; (3) avoiding

conflicting and duplicative pretrial conferences; (4) advancing judicial economy; and (5) reducing

the burden on the parties by allowing division of workload among several attorneys. *See In re*

*Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369 (J.P.M.L 2010); *In re*

*Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*, 424 F. Supp. 504, 506 (J.P.M.L. 1976).

Here, each of these factors will be advanced by the transfer of the Actions.

1. **Not only is judicial economy advanced by consolidation, but transfer and**
   **consolidation would also avoid duplicative discovery**.

Absent transfer and consolidation, at least eight different federal district courts will be

ruling on many common factual and legal issues in these cases. Litigation of these similar actions

separately offers no benefit and will inevitably result in duplicative efforts and inconsistent rulings.

In contrast, having a single district court judge coordinate pretrial discovery and rule on all pretrial

motions in these actions at once will maximize the convenience of the parties, reduce the

cumulative burden on the courts, reduce litigation costs, and minimize the risk of conflicting

rulings. *See, e.g., In re Xarelto (Rivaroxaban) Prods. Liab. Litig.,* 65 F. Supp. 3d 1402, 1405

(J.P.M.L. 2014)( "Issues concerning the development, manufacture, regulatory approval, labeling,

and marketing of Xarelto thus are common to all actions. Centralization will eliminate duplicative

discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their

counsel and the judiciary."). Where there are common facts regarding issues of liability, transfer

also minimizes if not eliminates the likelihood of repetitive discovery. *See, e.g., In re Air Crash*

*Disaster Near Pellston, MI, on May 9, 1970*, 357 F. Supp. 1286, 1287 (J.P.M.L. 1973) (cases

consolidated for pretrial proceedings where facts bearing on the issues of liability are common to

each action and transfer would avoid the possibility of duplication of discovery); *In re McCormick*

*& Co.*, 2015 U.S. Dist. LEXIS 165388, at *4 (J.P.M.L. Dec. 9, 2015)("Centralization will

eliminate duplicative discovery; avoid inconsistent pretrial rulings, particularly on class certification; and conserve the resources of the parties, their counsel and the judiciary."). That is precisely the case here as both discovery and motion practice in these actions will overlap considerably because of the similarity in the factual allegations and legal claims. Without transfer and consolidation, the parties would be required to address the same arguments and issues multiple times and engage in duplicative discovery. The Panel has previously found consolidation necessary in such cases and should reach the same conclusion here. *See, e.g., In re GNC Corp. Triflex Prods. Mktg. & Sales Practices Litig. (No. II),* 988 F. Supp. 2d 1369, 1370 (J.P.M.L. 2013)(consolidating cases alleging false and misleading advertising claims); *In re Ford Fusion & C-Max Fuel Econ. Litigation,* 949 F. Supp. 2d 1368, 1369 (J.P.M.L. 2013)(consolidating cases regarding the advertised mileage estimates of vehicles).

### 2.   Consolidation is necessary to avoid inconsistent rulings especially with respect to class certification.

Second, transfer and consolidation will also avoid inconsistent rulings. Certainly, the involvement of numerous attorneys, plaintiffs, and courts in various states is likely to result in conflicting rulings and inconsistent discovery obligations on the parties. Each of these cases asserts putative class actions with similar claims under state consumer protection statutes along with breach of warranty claims, misrepresentation and unjust enrichment claims. The Panel has regularly ordered transfer of class actions given the potential for conflicting rulings, even where only statewide classes are involved.  Centralization is appropriate to ensure consistent application of Federal Rule of Civil Procedure 23. *See In re Lawnmower Engine Horsepower Marketing and Sales Practices Litigation (No.II),* 588 F. Supp. 2d 1379 (J.P.M.L. 2008)(transfer ordered in docket of 39 statewide class actions); *In re Charlotte Russe, Inc. Fair and Accurate Credit Transactions*

*Act (FACTA) Litig.,* 505 F. Supp. 2d 1377, 1378 (J.P.M.L. 2007)("Centralization will…prevent inconsistent trial rulings, especially with respect to class certification…."); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 293 F. Supp. 2d 1378, 1379 (J.P.M.L. 2003) (consolidating putative class actions challenging the same conduct on behalf of similarly defined but geographically separate classes).

Rather than piecemeal litigation and the potential pitfalls of inconsistent rulings, transfer will avoid disparate rulings and the real consequence of additional litigation. *See In re StarLink Corn Products Liability Litig.*, 152 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001). As discussed *supra,* transfer and consolidation will prevent duplication of discovery. *See e.g., In re DePuy Orthopaedics, Inc.*, 753 F. Supp. 2d 1378, 1379 (J.P.M.L 2010).  Transfer and consolidation will permit a single judge to coordinate and establish one pretrial program rather than the helter-skelter of multiple pretrial plans. *See e.g., In re Nexium (esomeprazole) Prods. Liab. Litig.*, 908 F. Supp. 2d 1362, 1363 (J.P.M.L. 2012). Such coordinated pretrial proceedings conserve the time, effort and financial resources of both the judiciary and the parties. Consolidation will permit both Plaintiffs' counsel and Defendants' counsel to coordinate their efforts and share the pretrial workload among themselves; a rationale promoted by the Panel. *See e.g., In re Baldwin-United Corp. Litig.,* 581 F. Supp 739, 741 (J.P.M.L. 1984).

Lastly, transfer and consolidation will likely promote settlement of all cases in this matter.[2] It is well established that settlement matters are appropriate pretrial proceedings subject to centralization under § 1407.  *See In re Patenaude,* 210 F.3d. 135, 142-144 (3rd Cir. 2000). The fact

---

[2]  The first class action case arising out of allegations regarding Smitty's 303 tractor hydraulic fluid productions was brought against Smitty's and Tractor Supply in the United States District Court for the Western District of Missouri, *Hornbeck et al. v. Tractor Supply et al*, Case No. 4:18-cv-00523.  While the case settled, subsequent litigation has been brought in the eight jurisdictions noted.

14

that a settlement may have previously occurred regarding the subject of this litigation does not preclude transfer and consolidation in the eight pending Actions.  *See e.g., In re:  Operation of Missouri River System Litig.,* 277 F. Supp. 3d 1378, 1379 (J.P.M.L. 2003) (centralization for pretrial proceedings of six out of seven pending cases was warranted even though the seventh case settled.). Transfer and consolidation provide for an improved opportunity of global settlement of the Actions.

All factors support a finding that transfer of all Actions to a single district court is appropriate in this case.  As the third element of consideration by the Panel is met, transfer should be granted.

**E.  The Eastern District of Louisiana is a Proper Forum for Assignment**

The criteria used by the Judicial Panel for determining the most appropriate transferee forum under § 1407 include the convenience of the parties and witnesses; the relative degree of progress achieved in pending actions; the location of the parties, witnesses and documents; the likelihood that a given district's location would enhance the prospects for cooperation among the federal and state courts; the experience, skill, and caseloads of available judges, and docket conditions; and when no clear choice emerges from these factors, the preference of the majority of the parties.  *See In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig*., 853 F. Supp. 454, 455 (J.P.M.L. 1993); *In re New Mexico Natural Gas Antitrust Litig*., 482 F. Supp. 333, 337 (J.P.M.L. 1979).  The Panel has selected, for example, a transferee court based in part on the fact that it was a major metropolitan court and possessed the necessary resources to devote the substantial time and effort to pretrial matters that a complex docket is likely to require.  *See e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig*., 173 F. Supp. 1377, 1379-80 (J.P.M.L. 2001).

While no case is pending, at this time, in the Eastern District of Louisiana, it is an appropriate district court to handle consolidated pretrial matters. The fact that no pending action is currently pending in the Eastern District of Louisiana does not preclude its selection as the MDL district. *See.e.g., In re Bard IVC Filters Prods. Liab. Litig*., 122 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015); *In re Biomet M2A magnum Hip Implant Prods. Liab. Litig*., 896 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012). The principle defendants in this case are Smitty's and CAM2, who manufacture, produce and market the subject products to retailers throughout the United States. Both Smitty's and CAM2 are incorporated and domiciled in the State of Louisiana. Officers and employees of the company are principally located in Roseland, Louisiana. The primary manufacturing facilities are located in Roseland, Louisiana. The documents which are of significant importance in this litigation, documents related to the manufacturing of the subject products, the purchase of component ingredients, testing, marketing and advertising, packaging, as well as sales of the product by Smitty's and CAM2, are located at the companies' headquarters and domicile - Louisiana. The Panel routinely selects a transferee court based on the location of witnesses, documents, and defendant's corporate headquarters. *See In re Xybernaut Corp. Sec. Litig.,* 403 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (transferring actions to the Eastern District of Virginia in part because it was a "likely source of relevant documents and witnesses in as Xybernaut's headquarters are located there"); *In re Supervalu, Inc. Customer Data Sec. Breach Litigation*, MDL No. 2586, 2014 WL 7263354, at *1 (J.P.M.L. Dec. 16, 2014) (transfer to district where company was headquartered and thus where relevant documents and witnesses were located); *In re GAF ELK Cross Timbers Decking Mktg., Sales Practices & Prods. Liab. Litig.,* MDL No. 2577, 2014 WL 7006714, at *1 (J.P.M.L. Dec. 12, 2014)(same); *In re Rest-oleum Restore Mktg. Sales Practices & Prod. Liab. Litig.,* 84 F. Supp. 3d 1383, 1384 (J.P.M.L 2015) (selecting MDL district

based on corporate headquarters where relevant documents and witnesses would be located); *In re Polyurethane Foam Antitrust Litigation*, 753 F. Supp. 2d 1376, 1377 (J.P.M.L 2010) (utilized a nexus approach to select the state of defendant's headquarters).

The primary retailer joined by Plaintiffs to these actions, Tractor Supply Company, operates in the almost every state in the Union, and has its headquarters in Nashville, Tennessee. Orscheln Farm and Home, LLC, another Defendant retailer is headquartered in Moberly, Missouri and operates in eleven states.   Rural King, a retailer defendant in the Kentucky case, is headquartered in Mattoon, Illinois and operates in approximately thirteen states. The Eastern District of Louisiana is centrally located to the present Actions, which are predominately in the Midwest, and, if as anticipated, cases are brought in virtually all states, it is geographically located in the middle of the country. The Eastern District of Louisiana sits in New Orleans which has a major international airport which services Champaign, Illinois (the closest airport to Mattoon, Illinois), Nashville and Kansas City.  It is geographically accessible to counsel, the parties involved in the litigation, and witnesses, including expert witnesses. *See e.g., In re Walgreens herbal Supplements Mktg & Sales Practices Litig.,* 109 F. Supp. 3d 1373, 1376 (J.P.M.L. 2015) (district convenient and accessible forum for actions filed throughout the country); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) (Eastern District of Louisiana geographically central forum and Hon. Eldon E. Fallon experienced transferee judge).

The Eastern District of Louisiana has experience with MDL litigation.  Among the district's fourteen district court judges, several have handled MDL cases ranging from issues related to the sale and/or marketing of drywall products, pharmaceutical products, pool products, FEMA trailers, and even the oil spill at the Deepwater Horizon. The Panel has looked at the experience of proposed MDL judges in determining the proper MDL district.  *See In re Natrol,*

*Inc., Glucosamine/Chondroitin Mkgt & Sales Practices Litig.,* 26 F. Supp. 3d 1392, 1394 (J.P.M.L. 2014); *In re Coca-Cola Prods. Mktg. & Sales Practices Litig*., 37 F. Supp. 3d 1386, 1388 (J.P.M.L 2014); In re Xarelto, 65 F. Supp. At 1405.  The experience of the judiciary in the Eastern District of Louisiana is significant to the federal-state coordination and cooperation.

III.     <u>**CONCLUSION**</u>

Defendants Smitty's Supply Inc., and CAM2 International, L.L.C. request that the Panel enter its order transferring all related Smitty's 303 Tractor Hydraulic Fluid cases to the Eastern District of Louisiana for coordinated and/or consolidated proceedings.

Respectfully submitted,

**FRANKE SCHULTZ & MULLEN, P.C.**

/s/Nikki Cannezzaro

Nikki Cannezzaro          KS#20138
8900 Ward Parkway
Kansas City, MO  64114
P:(816) 421-7100/ F: (816) 421-7915
ncannezzaro@fsmlawfirm.com
**Attorneys for Defendants Smitty's Supply, Inc., and Cam2 International, LLC**